**CITY BANK FARMERS TRUST CO. v. HOEY, U. S. Collector of Internal Revenue for Second District of New York.**

District Court, S. D. New York.

April 22, 1941.

Mitchell, Taylor, Capron & Marsh, of New York City (Rollin Browne and George Craven, both of New York City, of counsel), for plaintiff.

John T. Cahill, U. S. Atty., of New York City (Myles J. Lane, Asst. U. S. Atty., of New York City, of counsel), for defendant.

BYERS, District Judge.

Decision is required as to whether certain corporate stocks, formerly held by the Bank of America Trust Company (hereinafter called "Bank of America") in a fiduciary or custodial capacity, were "transferred" to the plaintiff, City Bank Farmers Trust Company (hereinafter called "City Bank"), through the corporate merger of those companies, so as to require the payment of a documentary stamp tax.

The merger resulted from appropriate corporate action taken December 19, 1931, pursuant to the relevant sections of the Banking Law of the State of New York, Consol.Laws, c. 2; and all the facts necessary to a determination of this controversy are contained in a stipulation and a supplemental stipulation, filed in lieu of testimony.

There were three groups of nominal stockholding on the part of the Bank of America (a) as executor, administrator or trustee; (b) as escrow agent, and (c) as custodian or safe-keeping agent; and the documentary stamp tax payments, so allocated, were:

| | | |
|---|---|---|
| (a) | $3,541.04 | |
| (b) | 6.66 | |
| (c) | 12,294.62 | $15,842.32 |

That amount was paid, together with an item of interest of $369.58, making in all $16,211.90, which the plaintiff seeks now to recover; a claim for refund filed on January 11, 1937, was rejected on November 19, 1937.

The taxing statute is the Revenue Act of 1926, Title VIII, Section 800, Schedule A—3 [26 U.S.C.A. Int.Rev.Acts, pages 284, 289] whereby a stock transfer stamp tax is imposed upon "all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock * * * whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the

holder in any manner to the benefit of such stock * * * or not, on each $100 of face value or fraction thereof, 2 cents * * *."

The following Treasury Regulations, in effect in 1931, are involved:

Regulation 71:

"Art. 34. *Sales and transfers subject to tax.—*"

"(s) Upon a merger, the transfer of stock owned by a corporation which is merged into another corporation from the name of the first to the name of the second corporation, is a transfer by the act of parties and not wholly by operation of law."

"(u) Transfers of stock are subject to the tax, even though the holders thereof are not entitled in any manner to the benefit of the stock."

"Art. 35. *Sales and transfers not subject to tax.—*"

"(h) The transfer of shares or certificates of stock from the name of a deceased or resigned trustee to the name of a substituted trustee, appointed in accordance with the terms of the trust agreement, which is a transfer resulting wholly by operation of law."

"(q) Transfers of shares or certificates of stock which result wholly by operation of law are not subject to the tax. Transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as transfer of stock from decedent to executor."

This merger was accomplished pursuant to agreement between the corporations, which provided that the Bank of America should be merged into the City Bank pursuant to Sections 487 to 496, inclusive, of the Banking Law of the State of New York; and upon the merger becoming effective the latter institution should be the Continuing Corporation, and the assets, rights, privileges and franchises of every kind of the Bank of America "shall be deemed fully and finally transferred to and vested in the Continuing Corporation by operation of law, without further act or deed".

It is unnecessary to recite in detail the corporate proceedings whereby the agreement was carried into effect; they involved meetings of the respective boards of directors, and of the stockholders of each company, and the separate approval by the latter of the agreement.

All this was followed by the approval of the Superintendent of Banks of the State of New York.

The statutory effect of the merger is stated in Section 494 of the New York Banking Law, in the language which has been quoted above from the agreement, as to the transfer and vesting in the Continuing Corporation of all of the property, etc., of the Bank of America into the City Bank.

It becomes necessary to determine whether the proceedings which have been recited, accomplished a transfer of the said stock held by the Bank of America so as to give rise to liability for the payment of a stock transfer stamp tax.

The plaintiff's position is understood to be that what was transferred was not the stock of the beneficiaries and owners, but the capacity to act as the conduit of legal title thereto; that a mere continuity of function to act as the corporate medium for the expression of a testator's, creator's or owner's purpose, is not to be confused with the transition of title from one owner to another.

It seems that this position is sound, if realities are to govern.

The succession of the City Bank to the Bank of America does not come within the taxable purpose of the quoted portion of the statute, if the latter is understood, because there is no "transfer of legal title to shares or certificates of stock" arising therefrom; the ownership of the stock (namely, the legal title for purposes of transfer) is exactly where it was, speaking as of December 20, 1931, and the Regulations which have been quoted above are consistent with that understanding.

Subdivision (s) of Article 34 makes it plain that upon a corporate merger it is the transfer of stock owned by the corporation which is merged into another, which gives rise to tax liability. Typical cases are: Niagara Hudson Power Corporation v. Hoey, 2 Cir., 117 F.2d 414, and Koppers Coal & Transportation Co. v. United States, 3 Cir., 107 F.2d 706.

Subdivision (u) of the same article, dealing with the transfer of stock even though the holders "are not entitled in any manner to the benefit" thereof, would apply to a case in which the owner carries his stock in the name of a dummy, and sells to a buyer who avails himself of a like privilege; neither nominal holder is entitled to any

benefit, but there has been a taxable transfer from owner to owner, i. e., from dummy to dummy.

Subdivision (h) of Article 35, treating of sales and transfers not subject to the tax, seems to depict an equivalent state of facts to those here, namely, the resignation of a trustee and the transfer to a substituted trustee "which is a transfer resulting wholly by operation of law".

What took place may be regarded in the light of a resignation conducted over the statutory route; in that sense, it was accomplished through operation of law.

The Bank of America was a corporation created pursuant to statute, possessing specified powers, and its status, powers and functions were to be measured not only by its charter but by the provisions of the Banking Law of the State of New York, which permitted, as an alternative to resignation, merger into the City Bank.

A typical case, and one relied upon by the plaintiff, is United States v. Merchants National Trust & Savings Bank, 9 Cir., 101 F.2d 399, which involved a transaction not essentially to be distinguished from this one, and it was held that the transfer of fiduciary capacity was accomplished by operation of law.

That view has indeed commanded such departmental sanction, as may be observed in the following ruling [S.T. 157 (cited also as O.D. 157), reported in Sales Tax Rulings, Cumulative Bulletin July—December, 1921, at page 60]:

"It appears that the corporate existence of the trustee bank was merged into that of the successor trustee bank under the provisions of an act of the General Assembly of the State of Missouri, approved May 19, 1919 [Mo.St.Ann. § 5470 et seq., p. 7666 et seq.]. It is provided by section 173r of said act [Mo.St.Ann. § 5487, p. 7673], that the receiving corporation under the merger should become the successor of the merging corporation in all fiduciary capacities in which such merging corporation was acting at the time of such merger. It is further provided by section 173q of said act [Mo.St.Ann. § 5486, p. 7673] that the rights, title, and interest in and to all property of both companies so merging should be fully transferred to and vested in the receiving company upon merger and by operation of the provisions of the act.

"It is, therefore, the opinion of this office that if the trust companies in question were merged under the provisions of the above act, title to the stock held in trust by the merging corporation vested by operation of law in the receiving corporation, and hence the formal transfer of such stock from the name of the merging corporation to that of the receiving corporation is not subject to tax."

The defendant urges that this Court is required to follow the decision of the Circuit Court of Appeals in Weil v. United States, 2 Cir., 115 F.2d 999, 1002, which must be construed as disapproving the decision in United States v. Merchants National Trust & Savings Bank, supra. The opinion is not so understood.

The two cases were distinguished by the Court, in that in the Weil case the transfer to certain trustees by the Mortgage Commission, of bonds and mortgages, was held to be taxable because the trustees were chosen by the certificate holders who by affirmative vote consented to the plan. The opinion states: "The certificate-holders had the option either to require liquidation of their securities by the Mortgage Commission or to reject the plan proposed and obtain, if possible, the approval of some other plan which they might think more advantageous. * * * and this requirement made the transaction differ substantially from one where there was a mere substitution of trustees after the first trustee had died or become incapacitated and his successor was chosen solely through an order of the court or in accordance with the terms of the original trust agreement."

Here the several beneficiaries and bailors of the stock as to which the stamp tax was paid were not consulted concerning the contemplated merger; nor does it seem that they could have prevented it, had they been so disposed.

Since the essential theory upon which this decision is based seems not to have been examined and rejected by the Circuit Court of Appeals in the Weil case, it would seem that the District Court is not foreclosed from adopting it.

In the belief that what took place upon the merger of these corporations is not to be distinguished, in legal substance or effect, from a resignation by the Bank of America and the designation of a successor, judgment is ordered for the plaintiff.

Settle findings.